## BRAUN v MERRELL et

Ohio Appeals, 9th Dist, Lorain Co

No 617.  Decided Dec 8, 1932

G. A. Resek, Lorain, and William A. Miller, Amherst, for plaintiff.

Gilbert Bettman, Attorney General, Columbus, J. A. Godown, Ass't Attorney General, Columbus, and Don W. Myers, Prosecuting Attorney, Elyria, for defendants.

WASHBURN, J.

In making the present improvement, said department assumed that by virtue of a special act of the legislature in 1837 and the proceedings had thereunder, said highway then became a state highway 60 feet in width, and that therefore said trees were in the highway and the department had a right to remove them and make use of the land lying 30 feet on each side of the center of the improved portion of said highway.

If the state highway department is right in its contention that said highway across plaintiff's land is 60 feet wide, then the relief asked by plaintiff should be denied.

In considering said act of 1837 and what was done thereunder and the effect thereof, we should keep in mind that the only reasonable conclusion to be deduced from the evidence is that for fifteen years before said act was passed, there had been a 50-foot county highway extending across plaintiff's property and running between said two rows of trees, and that ever since said time there has been and at the present time there is a 50-foot highway on that same location. That fact destroys the basis of presumptions as to the 1837 road which might otherwise arise.

In early times, state roads were established by special acts of the legislature, and on March 10, 1837, the legislature appointed three men as commissioners to lay out and established a state road "commencing at the Lake Shore road, at Rocky river, in Cuyahoga County" and running through Charlestown (now Lorain), Vermillion and Huron, to Sandusky city; and provided that the commissioners should be governed by the law defining the mode of laying out and establishing state roads passed March 14, 1831. That law provided that the commissioners should employ a surveyor and assistants and lay out the road "from the place of beginning to the place of termination, on the most direct route that suitable ground can be found whereon to establish the same," and should "cause the same to be correctly surveyed and marked, throughout the whole distance of the same, and note the courses and distances thereof; and at the end of each mile shall mark the number thereof on a tree, or on a monument erected by them for that purpose," and make a certified return of the survey and plat of the whole length of said road and file a complete copy of such report, duly signed, with the commissioners of each county in which said road is located, and that "from thenceforth said road shall be considered a public highway," and that all state roads so established "shall be opened and considered public highways, sixty feet wide."

Said commissioners duly filed certified copies of said report in the various counties, and we must indulge the presumption that they complied with the requirements of said law and that they laid out a road which would probably pass through plaintiff's property; but there is no evidence that anything further was ever done by anyone in reference to said road, and for 90 years thereafter no one has ever known of a 60-foot road through said territory. Except in the towns where reference is made to streets or other permanent objects, there are no monuments; up to the time of the bringing of this suit, no survey of the road, except that mentioned in said report, had ever been made or attempted; such attempts as have been made during the pendency of this suit have been confined to villages where permanent objects are referred to in the survey.

The 50-foot road between said two rows of trees was surveyed in 1914 when the same was improved, but that was a survey of the road as it then existed, and those who made the survey had no knowledge concerning the 1837 survey and had never heard of the same.

Since this controversy arose, surveys have attempted to plat on paper the 1837 road, but there has been no actual survey of the same through the plaintiff's property, and from the evidence as to platting that has been attempted, we find that it is impossible to ascertain that the 1837 survey ran between said two rows of trees on plaintiff's property.

We find from the evidence that, for reasons given by the surveyors, it is difficult, if not absolutely impossible, to survey and locate where said state road was laid out, and the evidence does not warrant a finding that the line of said road as laid out by the commissioners crossed plaintiff's property where the 1822 and the present highway is, or that the 1822 road was widened or in any way changed or affected by the survey made by the commissioners under said 1837 act.

If the origin of the road across plaintiff's premises was unknown and we did not know that it existed in the same condition as it is today, so far as width and location are concerned, for a period of fifteen years before the survey of 1837, we might indulge the presumption that it is the road surveyed and laid out in 1837; but we cannot presume that a known 50-foot road is an unlocated 60-foot road.

It is significant that the 1837 survey specifically mentions the streets in the villages along which the line of the 1837 survey runs, but there is no mention in the survey of the duly established 1822 road then in use; if the line of the survey had run over exactly the same route as the 1822 road, it seems to us reasonable to expect that the 1822 road would have been mentioned or in some way referred to in the survey.

Even if it be true that, where a state road, which the statute says shall be 60 feet wide, is surveyed and laid out along and upon a 50-foot county road then duly established and in use, the existing county road is by that survey alone widened to 60 feet (although said 50-foot county highway is not mentioned or referred to in such survey and although for the succeeding one hundred years after such survey the road remains in actual use and occupancy and to all intents and purposes a 50-foot county road), we do not find in this case that the 60-foot highway was laid out along and upon the 50-foot highway across plaintiff's property.

When plaintiff learned what the state highway department proposed to do in reference to widening the road and removing said trees, she protested to the department, and the department, upon investigation, then learned that the location and the true course and boundaries of the so-called 1837 road were uncertain, and if that was the highway which it was proposed to improve, it was the plain duty of the department to proceed under the provisions of §1192 GC, to set in motion the machinery therein provided "and have the location and boundaries of such road or highway judicially determined"; that statute was passed for the very purpose of preventing the great state of Ohio from riding rough-shod over a humble citizen and compelling such citizen to bring an action to ascertain and protect his rights.

On the evidence in this case, we do not find that the road between said two rows of trees on plaintiff's property is the 60-foot 1837 road.

A decree may be drawn enjoining the highway department from entering upon or in any way disturbing the land or any trees thereon which are outside of a line on either side of said highway, 25 feet distant from the center line of the improved portion of said highway, until by appropriation or otherwise the department has acquired the right so to do.

PARDEE, PJ, and FUNK, J, concur in judgment.